UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RICKY T.B.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.  ) | Case No. 21-CV-49-CDL |
| ) | |
| **KILOLO KIJAKAZI,**[1] ) | |
| **Acting Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## **OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision denying benefits.

**I.    Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II. Procedural History

Plaintiff filed an application for social security disability benefits and supplemental security income disability benefits on January 29, 2019. (R. 10). Plaintiff alleges that he became disabled due to uncontrolled diabetes, pain throughout his body, neuropathy in his hands and feet, hepatitis C, and chronic fatigue. (R. 218). He was fifty years old on the

amended alleged onset date of October 1, 2018.[2] (R. 16). Prior to the amended onset date, plaintiff worked as a communications engineer, construction worker, and self-sealing fuel tank builder. *Id*. The Commissioner denied plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a telephone hearing on August 7, 2020.[3] Testimony was given by plaintiff and a vocational expert (VE). On September 1, 2020, the ALJ issued a decision denying disability benefits. (R. 10). On December 7, 2020, the Appeals Council denied plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1). Plaintiff timely appealed the decision to this Court. Accordingly, the Court has jurisdiction to review the ALJ's September 1, 2020 decision under 42 U.S.C. § 405(g).

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe

---

[2] Plaintiff's application alleged an onset date of August 23, 2018, but that date was amended at the administrative hearing.

[3] Plaintiff consented on the record to a hearing by telephone due to the extraordinary circumstances presented by the COVID-19 pandemic and all participants attended via telephone.

impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

### A.   Step One

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since October 1, 2018, the amended onset date. (R. 13).

### B.   Step Two

At step two, the ALJ determined that plaintiff has the following severe impairments: diabetes, peripheral neuropathy, and low vision. *Id*. The ALJ found that plaintiff's hepatitis C and colon cancer are non-severe. *Id*.

### C.   Step Three

At step three, the ALJ found that the plaintiff's impairments do not meet or medically equal a Listing. The ALJ stated that specific emphasis was given to Listings pertaining to loss of central visual acuity (Listing 2.02, et seq.) and peripheral neuropathies

4

(Listing 11.14, et seq.). (R. 13-14). The ALJ also stated that there is no specified listing for diabetes. (R. 14).

### D. Step Four

The ALJ determined that plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following limitations:

> no climbing of ladders, ropes, or scaffolds. Stooping, crouching, crawling, kneeling, balancing, and climbing of ramps or stairs can be done occasionally. Handling and fingering can be done frequently bilaterally. No exposure to unprotected heights, open flames, dangerous machinery or equipment, or other hazardous conditions (note that all moving machinery is not dangerous—such as machinery where moving parts are shielded). No exposure to direct sunlight and no exposure to elevated levels of interior lighting (elevated level is higher than ordinarily found in modern office buildings). No more than occasional use of computer monitors.

*Id.* Plaintiff's past relevant work includes work as a communications engineer (Dictionary of Occupational Titles (DOT) #003.061-030), construction worker (DOT #869.664-014), and self-sealing fuel tank builder (DOT #752.684-046). (R. 16). Plaintiff's past work was skilled or semi-skilled and classified as light or heavy in exertion. (*Id.*; *see* R. 58-62). The ALJ found that plaintiff is unable to perform any past relevant work and proceeded to consider the availability of alternative jobs at step five.

### E. Step Five

Citing the VE's testimony as to a hypothetical person with plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff can perform the requirements of the following representative occupations:

5

> ***Office helper***, light exertion, unskilled, specific vocational preparation (SVP) level 2, (DOT) # 239.567-410, with 21,000 jobs existing in the national economy;
>
> ***Small products assembler***, light exertion, unskilled, SVP 2, DOT # 706.684-022, with 55,000 jobs existing in the national economy;
>
> and
>
> ***Housekeeping cleaner***, light exertion, unskilled, SVP 2, DOT # 323.687-014, with 220,000 jobs existing in the national economy.

(R. 17). Accordingly, the ALJ concluded at step five that plaintiff is not disabled, as defined in the Social Security Act. *Id.*

### IV. Discussion

Plaintiff asserts two points of error in the ALJ's decision. First, plaintiff argues that the ALJ's RFC findings are deficient because the record supports further manipulative and postural limitations. Specifically, plaintiff argues that the ALJ failed to properly account for plaintiff's limitations in his ability to (a) handle and finger and (b) stand and walk due to his neuropathy. Second, plaintiff argues that the ALJ's consistency analysis of plaintiff's subjective complaints is legally flawed and not supported by substantial evidence. The Commissioner contends the ALJ's RFC determination and consistency analysis of plaintiff's subjective complaints are supported by substantial evidence in the record and free from reversible legal error.

#### A. RFC

##### i. The ALJ's Decision

In determining plaintiff's RFC, the ALJ considered plaintiff's medical records, prior administrative medical findings, and plaintiff's subjective statements. The ALJ's decision explained that

> [t]here is very little medical evidence. The consultative examination found sensory loss in the hands and feet, specifically the first three fingers of the hands. However, the [plaintiff] had a normal gait. The [plaintiff] takes insulin for his diabetes, but no other medication. . . . Postural limitations and vision/environmental limitations are also reasonable due to light sensitivity and some low vision. … Given the objective medical evidence in the record, the [ALJ] finds that the [plaintiff's RFC] is reasonable, and that the [plaintiff] could function within those limitations without experiencing significant exacerbation of his symptoms.

(R. 15). Accordingly, the ALJ determined that the RFC is reasonable and plaintiff retains the ability to perform light work with additional postural and environmental limitations to accommodate his neuropathy and vision impairments.

###    ii.   Manipulative Limitations

Plaintiff argues that the ALJ failed to adequately consider the medical evidence regarding the plaintiff's manipulative limitations. For the reasons set forth below, the Court finds that the ALJ's RFC determination is supported by substantial evidence and free from reversible error.

In determining a claimant's RFC, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)); *see also Bigpond v. Astrue*, 280 F. App'x 716, 718, 2008 WL 2222016 (10th Cir. 2008). The focus of disability determination is on the functional consequences of a condition, not the mere

diagnosis. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting that an ALJ's failure to include an alleged limitation in the RFC is not error if the limitation is not supported by the medical record).

Plaintiff suggests that, due to his impairments, he is limited to "less than light work involving no more than occasional manipulative requirements." (*See* Doc. 16. at 8). Plaintiff contends that the medical evidence regarding his neuropathy supports this more restricted RFC. Plaintiff cites the October 17, 2019 consultative examination with Peggy Moore-Gardner, APRN-CNP, where Nurse Moore-Gardner reported that plaintiff had "poor stooped posture, diminished sensation in the hands (including the fingers) and feet, hyperpigmentation in the lower legs and feet, and painful lumbar flexion and extension." *Id.* at 2 (citing R. 364-365, 367-370)). The consultative examination also noted that plaintiff had "diminished 4/5 strength, and 1+ reflexes of the extremities." *Id.* (citing R. 365, 367). On the other hand, Nurse Moore-Gardner found that plaintiff could effectively oppose the thumb to the fingertips, manipulate small objects, and effectively grasp tools such as a hammer despite his sensory loss in the first three fingers. (*See* R. 362).

"The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citation omitted). The threshold for evidentiary sufficiency under the substantial evidence standard "is not high." *Biestek*, --- U.S. ---, 139 S. Ct. at 1154. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

8

Here, the ALJ's RFC determination is well-supported by the medical evidence of record. The ALJ discussed the consultative examination, where Nurse Moore-Gardner found that plaintiff had "[f]ull range of motion of the neck and back," and a "stooped posture." (R. 15). The ALJ noted that plaintiff's "[m]otor strength was normal in the upper and lower extremities." *Id.* The ALJ also noted that plaintiff "failed monofilament testing to both hands and feet," and there was "hyperpigmentation of both lower legs and feet." *Id.* The ALJ noted that plaintiff was diagnosed with diabetes, neuropathy, and decreased vision, but no medical opinion was given. *Id.* (citing Exhibits 7F and 8F). Furthermore, the ALJ specifically discussed the consultative examination findings at the hearing, noting that Nurse Moore-Gardner found that plaintiff had "numbness in the first three fingers," but his "manipulative functions [were] fully preserved." (R. 41).

Thus, the ALJ's decision shows that he considered the medical evidence related to plaintiff's neuropathy and assessed an RFC that limits plaintiff to light work with additional limitations to accommodate his impairments. None of the medical evidence cited by plaintiff indicates that his neuropathy-related impairments restrict him to the degree he alleges. "[P]laintiff has not directed [the Court's] attention to any medical evidence that was disregarded [by the ALJ]" indicating plaintiff's impairments warrant greater limitations than those assessed in the RFC. *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000).

Further, The ALJ also considered the prior administrative medical findings of state

agency reviewing physicians.[4] The ALJ discussed the report of state agency reviewing physician Judy Marks-Snelling, D.O., who reviewed plaintiff's records, including Nurse Moore-Gardner's consultative examination report, and determined that plaintiff is capable of performing light work. (R. 16 (citing Exhibits 7A and 8A)). The ALJ found the opinion of Dr. Marks-Snelling persuasive "in that light work activity is supported by the evidence." *Id*. However, the ALJ concluded that the evidence supports greater "postural limitations and vision/environmental limitations due to light sensitivity and some low vision" and assessed RFC limitations that are *more restrictive* than those assessed by Dr. Marks-Snelling, who concluded plaintiff does not require any manipulative or postural restrictions. *Id*.

In light of this evidence, the ALJ reasonably found that plaintiff's impairments do not prevent him from performing work with the limitations assessed in the RFC "without experiencing significant exacerbation of his symptoms." (R. 15). As such, the ALJ's decision indicates that he weighed the medical evidence, determined that plaintiff's impairments require limitations in handling, fingering, standing and walking, but those impairments do not warrant restrictions greater than those assessed in the RFC. Substantial evidence supports the ALJ's conclusion. Plaintiff's argument simply invites the Court to improperly re-weigh the evidence. *See Noreja*, 952 F.3d at 1177; *see also Lax*, 489 F.3d at 1084.

---

[4] Plaintiff's application was reviewed initially on May 22, 2019 by Susan Clifford, M.D., who determined there was insufficient evidence to evaluate the plaintiff's claim. (*See* R. 16; *see also* R. 66-79). The ALJ found Dr. Clifford's opinion not persuasive, noting "[plaintiff] clearly has a severe impairment that causes more than minimal limitations." *Id*.

B.  **Consistency Analysis**

Plaintiff argues that the ALJ erred in finding plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. The ALJ explained his credibility determination in conjunction with the RFC assessment; therefore, some of plaintiff's challenges to the ALJ's consistency analysis are the same challenges plaintiff asserts to the ALJ's RFC determination. Consequently, the discussion below addresses plaintiff's challenges to the ALJ's consistency analysis and RFC determination collectively.

In evaluating a claimant's statements regarding pain or other symptoms, the ALJ "must consider (1) whether [a c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the [c]laimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [the c]laimant's pain is in fact disabling." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal citation omitted).

Federal regulations identify factors the ALJ should consider in evaluating the consistency of a claimant's statements: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and/or aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate symptoms; (5) treatment, other than medication, the claimant has received for relief of symptoms; (6) any measures other than treatment the claimant has used to relieve symptoms (such as lying flat on one's back,

11

standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p (citing 20 CFR §§ 404.1529(c)(3) and 416.929(c)(3)).

Plaintiff contends that the ALJ did not properly consider plaintiff's testimony that his neuropathy-related impairments necessitate additional RFC restrictions, particularly as to plaintiff's ability to handle, finger, and stand and walk for six hours in an eight-hour workday. Plaintiff cites his testimony that his neuropathy causes "pain and numbness of the hands and feet with exhaustion occurring after 15-20 minutes of any activity, as well as general motion sickness and nausea." (*See* Doc. 16. at 4 (citing R. 49-50)). Plaintiff testified that he "suffered from feet swelling as well as weakness in his hands causing him to drop things and have difficulty with buttons and self care tasks," he "could only be on his feet for 30 minutes at a time before resting for at least 45 minutes," and "his neuropathy also led to him needing to elevate his feet." *Id.* (citing R. 51-56).

However, the ALJ's decision explained why he found that the objective medical evidence does not support the alleged severity of plaintiff's symptoms. The ALJ first explained the regulations and Social Security Rulings controlling his credibility determination and explained the two-step process contained therein. (R. 14). The ALJ recognized that plaintiff's impairments could produce symptoms such as those alleged, but found that plaintiff's statements about the intensity, persistence, and limiting effect of those symptoms "are not entirely consistent with the medical evidence and other evidence in the record." *Id*. The ALJ then cited details from plaintiff's medical records, as outlined *supra* Part IV.A, to support his findings.

In addition to the medical evidence, the ALJ also found that plaintiff's statements about his activities of daily living are inconsistent with the severity of symptoms he alleges. The ALJ cited plaintiff's self-reported activities identified in the adult function report dated August 18, 2019, where plaintiff reported "he cooked meals, checked his sugars 4 times a day, read, watched television, and had no problems with personal care." (R. 15 (citing Exhibit 6E)). Plaintiff reported that he "prepared simple meals, cleaned, did laundry, did minor repairs, went outside daily, walked, went grocery shopping every two weeks for about half a day, and could handle his own money." *Id.* The ALJ further explained that,

> [a]s for [plaintiff's] statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the [plaintiff] left his last job due to an injury to his left eye, not due to neuropathy. Given that the [plaintiff] was capable of heavy work in 2018 and his neuropathy is in the early stages, light work is not unreasonable. . . . The [plaintiff's] treating physicians did not place any functional restrictions on his activities that would preclude light work activity with the previously mentioned restrictions.

*Id*. As such, the decision shows the ALJ reasonably concluded the evidence in the record does not support plaintiff's claim that his functional limitations would limit his ability to perform work within the restrictions assessed in the RFC. Nonetheless, plaintiff contends the ALJ's reasons for finding plaintiff's subjective complaints not credible are legally flawed and not supported by substantial evidence.

Plaintiff contends the ALJ's finding that plaintiff left his job due to an eye injury and not neuropathy is not supported by the record. The record shows plaintiff stopped working in August 2018. (*See* R. 37). Plaintiff indicated on his application that he left his last job due to his conditions in general, including neuropathy. (*See* Doc. 16 at 7 (citing R.

218-219)). However, plaintiff reported at the consultative examination that he "[l]ast worked in 2018[,] . . . [f]ormerly worked as a spray foam insulator," and "got chemical in left eye and has extremely poor vision." (R. 363). This is consistent with medical evidence cited by the ALJ from Triad Eye Institute dated July 27, 2018 to September 24, 2018, where plaintiff sought treatment for "corneal edema after being burned by fumes" at work. (*See* R. 15; *see also* R. 302-333). Thus, the ALJ's finding is supported by the medical evidence in the record. Plaintiff points to no medical evidence in the record to support his claim that he left his job due to his conditions in general, including neuropathy. Therefore, the Court finds no reversible error in the ALJ's finding that plaintiff left his job due to an eye injury and not neuropathy.

Plaintiff also contests the ALJ's finding that plaintiff's neuropathy was in the early stages. Plaintiff contends that "nothing in the medical evidence described it as such [early stages] and such a description was undermined by "findings of diminished sensation, strength, and reflexes in the extremities in general and skin color changes of the lower extremities." (*See* Doc. 16 at 8 (citing R. 15, 338, 365, 367)). However, as discussed *supra* Part IV.A., the ALJ's decision shows that he acknowledged the medical evidence related to plaintiff's neuropathy impairments and found it is not fully consistent with the degree of severity plaintiff alleges.

The ALJ cites records from St. Francis Health System dated October 25, 2018 which show that plaintiff "was diagnosed with a UTI and type II diabetes with severe hyperglycemia." (R. 15. (citing Exhibit 5F)). The ALJ noted that the consultative examination revealed that plaintiff "failed monofilament testing to both hands and feet,"

14

there was "hyperpigmentation of both lower legs and feet," and he had "stooped posture." *Id*. However, plaintiff's "[m]otor strength was normal in the upper and lower extremities" and he had "[f]ull range of motion of the neck and back." *Id*. The ALJ also discussed the consultative examination findings at the hearing, noting that Nurse Moore-Gardner found "numbness in the first three fingers," but plaintiff's "manipulative functions [were] fully preserved." (R. 41). Notably, Nurse Moore-Gardner did not assess any functional limitations relating to plaintiff's neuropathy-related impairments. (*See* R. 362). Further, Nurse Moore-Gardner's findings are consistent with an RFC of light work with limitations to accommodate plaintiff's impairments. *See* 20 C.F.R. § 404.1529(c)(4) (plaintiff's statements are to be evaluated "in relation to the objective medical evidence.").

Plaintiff's contention is correct that the medical evidence does not specifically describe his neuropathy as being in the early stages. However, as the ALJ correctly noted, "[plaintiff] was capable of heavy work in 2018" which contradicts the severity of plaintiff's alleged neuropathy-related limitations. (R. 15). For instance, plaintiff reported in his adult function report that one of the daily duties he performed at his last job as a spray foam insulator was "to swap out (load/unload) material daily" which required lifting "two 55 gal drums 500 lbs per drum." (R. 242). Plaintiff also reported he would "drag hoses 310 ft long 1 lb/ft," and he "lifted various tools" and "ladders." *Id*. Plaintiff reported he was capable of lifting 100 pounds or more, and he could lift 50 pounds or more frequently. *Id*. Plaintiff reported that he used "machines, tools, or equipment." *Id*. Plaintiff reported that each workday he would walk for three hours; stand for five hours; sit for two hours; and climb, stoop, kneel, crouch, and crawl for one hour. *Id*. He reported that each workday he

would handle, grab, or grasp big objects and write, type, or handle small objects for two hours. *Id.* He also reported that he would reach for six hours each workday. *Id.* These self-reported heavy work duties support the ALJ's conclusion that plaintiff's neuropathy is not as severe as he alleges.

Moreover, a review of plaintiff's medical records from 2018 fails to show any instances where plaintiff reported to his medical providers any specific functional limitations due to his neuropathy. In fact, all of plaintiff's 2018 medical records reveal that his reasons for seeking medical treatment were unrelated to his neuropathy. For example, on January 26, 2018, plaintiff presented to Urgent Care of Muskogee with a complaint of a chest cough and was diagnosed with influenza (*see* R. 300); he was seen at the Triad Eye Institute from July 27, 2018 to September 24, 2018 for corneal ulcer/edema (*see* R. 302-333); and he presented to Saint Francis Hospital on October 25, 2018 with complaints of abdominal pain, fever, chills, diarrhea, nausea, and difficulty with urination. (*See* R. 334-358). Additionally, none of the medical records cited by plaintiff indicate that he is unable to perform work consistent with the restricted range of light work set forth in the RFC. In light of this evidence, the ALJ's assertion that plaintiff's neuropathy is in the early stages is supported by substantial evidence. Thus, the Court finds no reversible error in the ALJ's explanation.

Plaintiff contends the ALJ erred in relying on the absence of any medical opinion in the record supporting further RFC limitations. Plaintiff argues that lack of any treating physician opinions "is of little importance" when a claimant was not working or being evaluated for disability purposes during the relevant time period. (*See* Doc. 16 at 8 (citing

16

*Ford v. Apfel*, 2000 WL 702752, at *4 (10th Cir. 2000) (unpublished)). However, the lack of a medical opinion showing plaintiff has limitations more restrictive than the RFC is a factor the ALJ *should* consider when determining plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider whether there are conflicts between a claimant's statements and statements by treating or non-treating sources). Here, the ALJ properly noted that no medical opinion indicated that plaintiff cannot perform work consistent with the restricted range of light work set forth in the RFC. Moreover, the ALJ's consistency determination was not based solely on the failure of plaintiff's treating providers to document functional limitations. Thus, the Court finds no reversible error with the ALJ's explanation.

Plaintiff also argues that it was error for the ALJ to rely on plaintiff's lack of medication and treatment as a factor to discount his credibility, without considering plaintiff's intolerance to and inability to afford his medications. Plaintiff testified "he had twice been unable to afford the colon cancer screening recommended by his doctors and that he had been diagnosed with but received no treatment for hepatitis C," he "currently utilized only insulin after becoming resistant to Metformin and having limited finances," and he "could not tolerate compression socks due to them making him sick." (*See* Doc. 16 at 4 (citing R. 49-52)). Although the ALJ's decision did not specifically cite plaintiff's statements regarding his intolerance to and inability to afford medications, the ALJ's decision indicates that he considered plaintiff's lack of medication and treatment in his consistency analysis and RFC determination. For example, the ALJ cited the records from Saint Francis Hospital dated October 25, 2018, where plaintiff reported he "was reluctant

17

to use insulin at home and did not like to take medications." (R. 15). The ALJ also cited the consultative examination where plaintiff reported "he was diagnosed with hepatitis C in 2014 but had no treatment." *Id.* The ALJ noted plaintiff's testimony that he had "no actual diagnosis of colon cancer or treatment for colon cancer," and "he has no symptoms of hepatitis C and has received no treatment." (R. 13).[5]

The ALJ also questioned plaintiff about his treatment with medications at the hearing:

> ALJ: So you're—so you're not taking metformin anymore? You're on—and you're on insulin exclusively?
>
> Pltf: Yes, sir. …
>
> ALJ: Do you take medication, sir, for your neuropathy?
>
> Pltf: No, sir. I take no medications other than the insulin.
>
> ALJ: Okay. Go ahead, Counsel.
>
> Atty: Certainly. And is that just because you can't afford it?
>
> Pltf: That's primarily it, sir.

(R. 51, 54). Plaintiff does not identify any evidence in the record, other than his testimony or statements, where he reported his intolerance to or inability to afford medications to his medical providers. To the contrary, as the ALJ noted, the medical record reveals that plaintiff reported he "did not like to take medications." (R. 15). This evidence is

---

[5] The ALJ found that plaintiff's colon cancer and hepatitis C were non-severe impairments, which plaintiff has not appealed. Accordingly, this opinion addresses plaintiff's challenges regarding his functional limitations due to his neuropathy. (*See* Doc. 16).

inconsistent with plaintiff's testimony that his inability to pay for medications is the primary reason he does not take them. Moreover, plaintiff's lack of medication and treatment is only one of the reasons the ALJ gave for finding plaintiff's subjective complaints not credible. As outlined herein, the ALJ's consistency analysis is also supported by the objective medical evidence and plaintiff's statements regarding his activities of daily living. Accordingly, the Court finds no reversible error in ALJ's consideration of plaintiff's lack of treatment and medication.

Lastly, plaintiff argues that the ALJ's consistency analysis failed to address "any of the non-medical evidence pertinent to other relevant factors like [plaintiff's] daily activities." (*See* Doc. 16 at 10). However, as set forth above, the ALJ's decision specifically addressed plaintiff's activities of daily living and adequately set forth his reasoning for finding plaintiff's subjective statements were not supported by the objective medical evidence. Thus, the ALJ's reasoning, and the evidence on which he relied, are sufficient to enable meaningful judicial review, and his consistency determination is entitled to deference. *See Keyes-Zachary*, 695 F.3d at 1166; *Kepler*, 68 F.3d at 391.

### V. Conclusion

The Court finds the ALJ's decision is supported by substantial evidence and reflects that the ALJ applied the proper legal standards. Therefore, the decision of the Commissioner finding plaintiff not disabled is **affirmed.**

ORDERED this 30th day of September, 2022.

Christine D. Little
United States Magistrate Judge